**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| OTONIEL GOMEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:23-cv-01718-JSD |
| | ) | |
| CITY OF ST. LOUIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on the application of self-represented plaintiff Otoniel Gomez to proceed in the district court without prepaying fees and costs. The Court will grant the application and waive plaintiff's initial partial filing fee. Additionally, after initial review pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court will dismiss this action for failure to state a claim upon which relief may be granted.

**Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action without prepayment of fees and costs is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has not submitted a certified account statement as required by 28 U.S.C. § 1915(a)(2). He states in a letter to the Court that he has asked the St. Louis City Justice Center for a copy of his inmate account statement, but the Justice Center has not complied. *See* ECF No. 6. But based on the financial information provided in plaintiff's application, the Court will grant the application and waive the initial partial filing fee. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (explaining that when a prisoner is unable to provide the court with a certified copy of his inmate account statement, the court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances").

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed without full payment of the filing fee if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016).

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within

the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even

self-represent litigants are required to allege facts which, if true, state a claim for relief as a matter

of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

### The Complaint

Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983 alleging civil rights

violations against the following defendants: the City of St. Louis; St. Louis City Justice Center

Administration; Correctional Officer (CO) Unknown Moton; Deputy Commissioner Unknown

Ross; Maj. Unknown Earbin; Caseworker Scott Weber; Unnamed CO 1st Shift Sept. 2, 2023;

Comm. Unknown Clemmons-Abdullah; 4th Floor Supervisor Unknown Brock; Unknown Inmate;

and Medical Staff.

Plaintiff alleges defendants were negligent in their duty to keep him safe at the St. Louis

City Justice Center. He alleges he was assaulted by two inmates on September 2, 2023. Plaintiff's

allegations are difficult to understand, so the Court will quote the relevant portion:

> The Correctional Officer arriving at 9 a.m. Saturday September 2 was 100%
> unaware that (1) I am a P.C. inmate being in cell 11, (2) P.C. (protective custody)
> cells are 1-11, (3) cells 12-16 are G.P. (general pop[ulation]), (4) that on Friday
> September 1st cells 10, 11 were skipped for rec while cells 12-16 were given rec.
> The point is she let cells 10-14 on rec and after having a confrontation with cell 14
> regarding the tablets (at the suggestion of Caseworker Weber I had taken it upon
> myself to label the broken charging stations which I announced the day prior) I
> alerted the C.O. that we weren't supposed to be on rec together and she came out
> of the bubble and saw me go to the shower, made me get out of the shower, watched
> the inmate threaten me and charge at my door after making me go back in my cell
> and proceeded to allow G.P. rec ignoring that inmate came to my door threatening
> me. She then completely neglected that after letting cell 10 and 11 [protective
> custody] on rec following G.P. (cell 14) rec that the inmate in cell 15 broke out of
> his cell, went to cell 14 broke him out of his cell and cell 14 had enough time [to]
> punch me at least 6 times breaking the bones in my face and damaging my shoulder
> I lost consciousness temporarily.

(ECF No. 1 at 5).

In an additional claim, he sues caseworker Weber for negligence, because this caseworker

was unaware of the assault and plaintiff was mistakenly logged out of the commissary, tablet, and

phone system. He did not get his PIN back until September 22, although he had been asking for it since September 5. On December 21, Weber told plaintiff that he had written so many times that he refused to read his complaints.

Plaintiff states CO Moton was complicit in negligence, but does not allege any actions or inactions on the part of CO Moton. After the assault, defendant Brock placed plaintiff into 4B administrative segregation. Plaintiff claims this was excessive punishment, cruel and unusual punishment, and a due process violation.

In an apparently unrelated incident, plaintiff sues a sheriff escort for a HIPAA violation, claiming the escort was present in the exam room on November 21, 2023, while plaintiff was giving his medical history to the medical staff. He also claims, without details, that medical staff was negligent and gave him inadequate care.

For his injuries, plaintiff states that he suffered a broken nose, broken occipital bone, shoulder damage that turned into a loss of motion, recurring headaches, problems sleeping, loud snoring, partial numbness of left side of mouth and lips. He states he went to the emergency room where he received x-rays , a CT scan, and medication. He returned for follow-up visits. He states that he now wears an eye patch because of his frequent headaches.

For relief, plaintiff seeks adequate medications. He seeks housing without constant lighting, which he states causes him headaches. He seeks medical treatment for his nose and occipital bone, nerve, face, and shoulder. He wants CO Moton to be removed from her station as his CO. He wants Scott Webber removed from being a caseworker. He also seeks $700,000 and an apology from inmate "Vito" and supervisor "Brock". He would also like to see Roberta Gordon publicly commended for her service.

**Discussion**

At all relevant times, plaintiff was a pretrial detainee, so his constitutional claims fall within the ambit of the Fourteenth Amendment. *See Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010). In determining whether pretrial detention is unconstitutionally punitive, the United States Court of Appeals for the Eighth Circuit has applied the deliberate indifference standard. *Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003); *see also Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) ("To succeed on a claim under the Due Process Clause of the Fourteenth Amendment, a pretrial detainee…must show the defendant official was deliberately indifferent to his rights"). In particular, the Eighth Circuit has explained that this standard is applicable when "the governmental duty to protect at issue…is not based on a pretrial detainee's right to be free from punishment but is grounded in principles of safety and well-being." *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). To that end, the Eighth Circuit has held "that deliberate indifference is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care, and reasonable safety." *Id*. at 345.

> *Plaintiff's Official Capacity Claims Against Correctional Officer Unknown Moton, Deputy Commissioner Unknown Ross, Maj. Unknown Earbin, Caseworker Scott Weber, Unnamed Correctional Officer 1st Shift Sep 2, 2023, Comm. Unknown Clemmons-Abdullah, 4th Floor Supervisor Unknown Brock, Unknown Inmate, and Medical Staff*

Plaintiff has sued all defendants except "Unknown inmate housed in 4C14" only in their official capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999); *see also Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public

employer"). In order to prevail on an official capacity claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Id.*

Municipal liability under § 1983 may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018); *see also Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Plaintiff has not alleged any constitutional violations arising from an official policy, an unofficial custom, or a failure to train or supervise on the part of the City of St. Louis. Thus, he cannot establish any liability on the part of the City of St. Louis. And because the remaining defendants (except Unknown Inmate) are individuals employed by the City of St. Louis and are named only in their official capacities, these defendants are subject to dismissal.

*Plaintiff's Official Capacity Claims Against the City of St. Louis and the St. Louis City Justice Center Administration*

As stated above, plaintiff may only sue the City of St. Louis and the Justice Center if he can show his alleged constitutional violations resulted from an unconstitutional policy, custom, or failure to train and supervise. *Mick*, 883 F.3d at 1079. Plaintiff's complaint does not make any of these allegations. Thus, defendants the City of St. Louis and the Justice Center will be dismissed.

*Individual Capacity Claims Against the Individual Defendants*

Even if the Court were to allow plaintiff to amend his complaint to bring his claims against the individual defendants in their individual capacities, these claims would also be subject to dismissal. "Prison inmates have a clearly established Eighth Amendment right to be protected from violence by other inmates." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). "However, 'it is not every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety.'" *Whitson v. Stone Cnty. Jail*, 602

- 6 -

F.3d 920, 923 (8th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "Rather, prison officials violate the Eighth Amendment 'only when they exhibit a "deliberate callous indifference" to an inmate's safety.'" *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018) (quoting *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002)).

To prove a constitutional violation, a plaintiff must "satisfy two requirements, one objective and one subjective. The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious. The second requirement is subjective and requires that the inmate prove that the prison officials had a 'sufficiently culpable state of mind.'" *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (citation omitted) (quoting *Farmer*, 511 U.S. at 834). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Vandevender v. Sass*, 970 F.3d 972, 975-76 (8th Cir. 2020) (quoting *Farmer*, 511 U.S. at 8337). If a plaintiff fails "to plausibly allege a substantial risk of serious harm," then the "Complaint fails to state a claim." *Id.* at 976.

Failure-to-protect cases often arise out of an inmate-on-inmate assault involving (1) an attacker known to be dangerous and volatile, (2) an attacker "who previously threatened or fought with the victim," or (3) "a victim who should have been better protected because of known prior inmate threats." *Vandevender*, 970 F.3d at 976 (collecting cases). In determining whether a substantial risk of serious harm exists, Courts consider (1) whether the plaintiff had been threatened by the attacker, (2) whether the attacker was known to be violent or volatile, (3) the nature of any prior relationship between the plaintiff and attacker, and (4) whether the plaintiff or attacker had recently been in protective custody or administrative segregation. *See id.* Ultimately, a plaintiff must show that he faced a "pervasive risk of harm." *Id.* at 977 (quoting *Falls v. Nesbitt*, 966 F.2d 375, 378 (8th Cir. 1992)). "[A] 'pervasive risk of harm' may not ordinarily be shown by

pointing to a single incident or isolated incidents," but it is "enough that violence and sexual assaults occur with sufficient frequency that prisoners are put in reasonable fear for their safety and to reasonably apprise prison officials of the existence of the problem and the need for protective measures." *Id.* (quoting *Andrews v. Siegel*, 929 F.2d 1326, 1330 (8th Cir. 1991)).

Liberally construed, plaintiff has alleged facts from which the Court could plausibly find that defendants could have drawn the inference that plaintiff faced a substantial risk of serious harm. *Id.* at 975-76 (quoting *Farmer*, 511 U.S. at 837). Plaintiff claims that he had been threatened by his attacker and his attacker had "charge[d] at his door." Plaintiff was in protective custody, however, at the time of the attack. This is some evidence that plaintiff did not face a substantial risk of serious harm. Safety measures had already been put into place by defendants to protect plaintiff from any attack.

Fatal to his claim, however, plaintiff has not alleged that defendants acted or failed to act with deliberate indifference. *See Farmer*, 511 U.S. at 837. Plaintiff specifically claims defendants were negligent, but mere negligence is insufficient to demonstrate deliberate indifference. *Jackson*, 140 F.3d at 1152. For a defendant to have acted with deliberate indifference, "he must have recklessly disregarded a known, excessive risk of serious harm to" a plaintiff's safety. *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003). Plaintiff has not alleged that any defendant acted with reckless disregard for his rights.

Plaintiff alleges he was attacked by the inmate in cell 14, who had been broken out of his cell by an inmate in cell 15, who had broken out of his own cell. He has not alleged that defendants were aware or reasonably should have been aware of a serious risk posed by the inmate locked in cell 14. In fact, based on plaintiff's allegations, defendants would have drawn the opposite conclusion—that plaintiff, who was in protective custody, was safe from attack by a general population inmate locked in his cell. Simply put, defendants could not have "recklessly disregarded

a known, excessive risk of serious harm to" plaintiff when his attacker was locked up. Plaintiff's allegations establish that a reasonable person would have thought plaintiff was protected from harm from his attacker. He has not alleged that any defendant acted with an intent to deprive him of his rights to be safely incarcerated. Therefore, even assuming plaintiff would amend his allegations to sue defendants in their individual capacities, he has not stated a claim against defendants for unconstitutional failure to protect.

*Defendant Unknown Inmate*

Plaintiff also brings § 1983 claims against an "Unknown Inmate," which the Court presumes is his attacker from cell 14. He sues this Unknown Inmate in his individual capacity. These claims will be dismissed because the Unknown Inmate was not a state actor.

In order to state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). With regard to the first element, a defendant can only be held liable pursuant to § 1983 for actions taken under color of state law. *See Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that § 1983 secures constitutional rights from government infringement, not infringement by private parties).

Plaintiff has not alleged the Unknown Inmate was a state actor or was participating in joint activity with a state actor. *See Pearl v. Dobbs*, 649 F.2d 608, 609 n.1 (8th Cir. 1981). Thus plaintiff's § 1983 claims against the Unknown Inmate will be dismissed.

*Alleged HIPAA Violations*

Plaintiff also cannot state a plausible claim under § 1983 for a HIPAA violation. The Eighth Circuit has ruled that HIPAA cannot be privately enforced either via § 1983 or through private

right of action. *Adams v. Eureka Fire Protection Dist.*, 352 F. App'x  137, 137-39 (8th Cir. Oct. 20, 2009) (per curiam).

 *Allegations Regarding Plaintiff's Tablet*

 Finally, plaintiff alleges he was logged out of the commissary, his tablet, and the phone system for twenty days. He notified the jail's staff of this condition on day 5. The United States Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Court finds that plaintiff cannot state a plausible constitutional claim based on his twenty-day inability to use the commissary, his tablet, or the phone. For this reason, these claims will be dismissed.

 Accordingly,

 **IT IS HEREBY ORDERED** that plaintiff's application to proceed in the district court without prepaying fees and costs is **GRANTED**. [ECF No. 2]

 **IT IS FURTHER ORDERED** that this case is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).

 **IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel is **DENIED** as moot. [ECF No. 3]

 An Order of Dismissal will accompany this Memorandum and Order.

 Dated this 14th day of  June, 2024.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE
